**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**JORDAN BROWN,**

      **Plaintiff,**

**v.**                                    **Civil Action No.: 4:24-cv-00128-RAJ-LRL**

**TORRES TOWING,** *et al.,*

      **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR AMEND
JUDGMENTS (DKT. 65 & 66) DISMISSING THE PLAINTIFF'S AMENDED
COMPLAINT, LEAVE TO FILE A SECOND AMENDED COMPLAINT, OR IN THE
ALTERNATIVE, MOTION TO CERTIFY QUESTIONS OF LAW TO THE SUPREME
COURT OF VIRGINIA**

**INTRODUCTION AND PROCEDURAL HISTORY**

On June 30, 2025, Defendant Torres Towing, LLC filed a Rule 12(b)(6) Motion to Dismiss, Dkt. 53, and a memorandum in support, Dkt. 54. Torres attacked the previously filed Amended Complaint, Dkt. 9, solely based on the argument that its conduct during the repossession of Mr. Brown's vehicle did not result in a violation of the Servicemembers Civil Relief Act ("SCRA") ("Plaintiff asserts that Torres had no right to repossess the Vehicle based on the protections to him under the SCRA" … "Since the Plaintiff is ineligible for protection under the SCRA, Torres' possession of the Vehicle without a court order would not constitute unfair or unconscionable be means of collection …").  Torres's Motion to Dismiss based on SCRA grounds was filed five months after Plaintiff disclosed to the Court that he would not be proceeding on his SCRA claims (Dkt. 33), and the Court also dismissed the promissory estoppel claims (under Texas law) against the  other Auto Defendants based indirectly upon their prior representations made related to the application of the SCRA. Dkt. 42. The sole sum and substance of Torres Towing's Motion to

Dismiss is that Plaintiff's then nonexistent SCRA-based claims would not survive its Motion to Dismiss. Despite its failure to seek dismissal of the other claims against it, thereby losing the ability to raise such arguments for the first time in its reply memorandum, it nevertheless used its Reply to make new arguments, presented to the court for the first on claims that were not part of it motion and supporting memorandum.

More specifically, Torres was not a party to Brown's original Complaint. Dkt. 1. Torres was added to the action by Brown's Amended Complaint. Dkt. 9. Thereafter, Torres defaulted in responding to Plaintiff's Amended Complaint. *See* Dkt. Entry on April 18, 2025. Later, Torres appeared by counsel in the action and the Order of default was vacated. Dkt. 49. Before Torres finally appeared the Court had already dismissed Plaintiff's claims against certain other defendants in relation to Brown's alternative promissory estoppel claim (i.e. Count I of Amended Complaint (ECF 9). Dkt. 42.

In its Motion to Dismiss (Dkt. 53), Torres advanced arguments for dismissal based upon claims and allegations the Court had already resolved in relation to the Auto Defendants (i.e. SOUTHERN AUTO FINANCE COMPANY, LLC, d/b/a SAFCO ("SAFCO"), SAFCO WAREHOUSE SPV 1, LLC ("SPV 1"), and MVTRAC, LLC, a/k/a MVCONNECT, LLC ("MVTRAC") in relation to Brown's alternative promissory estoppel claim (i.e. Count I of Amended Complaint (ECF 9)) claiming the tow of Brown's vehicle did not violate the Servicemembers Civil Relief Act. Torres advanced those claims even though the Court had previously dismissed those claims (which were not even asserted against Torres in the Amended Complaint). ECF. 42. Torres' Motion did not address any of the contractual or state law basis for Brown's claims. Dkt. 53. Rather, Torres waited to advance those such arguments for the first time to its Reply Brief. Dkt. 58.

A party is not permitted in the Fourth Circuit to advance arguments for the first time in a reply brief. *Cf. United States v. Smith*, 75 F.4th 459, 468 (4th Cir. 2023) ("[A] party forfeits an argument by failing to develop it in the opening brief, even if its brief takes a passing shot at the issue" (cleaned up)); *Zinner v. Olenych*, 108 F. Supp. 3d 369, 398 (E.D. Va. 2015) ("Typically, courts will not consider an argument raised for the first time in a reply brief"); *In re Volkswagen AG*, 2024 WL 646344, at *2 (E.D. Va. Feb. 15, 2024) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered"). Further, Brown objected on the record to Torres' new arguments raised in its Reply Brief for the first time. Dkt. 59.

Without notice to the Plaintiff that the Court intended to consider Torres' new Reply Brief arguments, the Court granted Torres' motion to dismiss, applying those erroneous arguments. Dkt. 65. Elsewhere herein, Plaintiff addresses Virginia law (common law and statutory) which barred the breach of the peace tow that occurred here (especially when the well-pled facts are viewed in a light favorable to Brown as the non-moving party). However, as part of this motion, Plaintiff requests leave of the Court to amend his claims against Torres for the first time to remove the allegations necessary and related to Count I which the Court dismissed (Dkt. 42) and related to the claims against the City of Hampton, Plaintiff already voluntarily dismissed (Dkt. 33). A redacted version of the Amended Complaint removing these allegations and claims is attached hereto as Exhibit A. Removal of these allegations as shown on Exhibit A demonstrates Plaintiff has pled a sufficient basis that Torres and the Auto Defendants had no right under Virginia law to conduct a non-peaceful tow of Brown's vehicle and his claims do not hinge on the SCRA.

In addition, Brown would propose adding two other facts that relate to the purported right of Torres to tow Brown's car (that were previously dismissed to the Court before it ruled on the

Torres motions to dismiss at Dkt. 59, FN 1), which it did not have under Virginia law.  These would be:

- At the time of Torres' tow on behalf of the Auto Defendants of the Brown vehicle while Mr. Brown was objecting and inside the vehicle on March 20, 2024, it had no lawful right to perform any tow under Virginia law since it nor its driver was properly registered by the Virginia Department of Criminal Justice Services to act as a Tow Truck Driver.

- Conducting tows in Virginia without registration is a crime and cannot occur unless it is done by a registered driver. Va. Code Ann. § 46.2-116(D).[1]

Pursuant to Fed. R. Civ. Pro. 59(e) or  60(a) or (b), plaintiff Jordan Brown submits this motion to alter or amend the judgment entered in this case. Mr. Brown's Fair Debt Collections Practices Act (FDCPA) claim against Torres Towing, LLC is based on its commission of the per se unfair practice of taking nonjudicial action (a self-help repossession of his car, that is, towing Plaintiff's vehicle without having a court order providing for the taking) and while so doing committing breaches of the peace to dispossess Mr. Brown of his personal vehicle by breaching the peace and thereby losing the right to continue with what, after the breaches of the peace, became an unlawful taking.

**ARGUMENT**

**1. Standard For FRCP 59(e) Motion**

Rule 59(e) provides in pertinent part the following with respect to altering or amending a

---

[1]    A clean, proposed Second Amended Complaint (this would be a first time amendment since Torres became a party to the action) is attached hereto as Exhibit B and includes the removal of the prior claims dismissed, certain SCRA allegations, and adds these two additional facts.

judgment:

> Rule 59. New Trial; Altering or Amending a Judgment
>
> ….
>
> (e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Rule 60. Relief from a Judgment or Order

> (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.
>
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) ;
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>> (4) the judgment is void;
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>> (6) any other reason that justifies relief.

*Id.*[2]

---

[2]    Fed. R. Civ. P. 60(b)

> provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment. In particular, Rule 60(b)(6), upon which respondent relies, grants federal courts broad authority to relieve a party from a final judgment "upon such terms as are just," provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States,* 335 U.S. 601, 614–615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be

Under Rule 59(e), a party may move for alteration or amendment of a judgment due to "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. The decision whether to alter or amend a judgment is committed to the discretion of the trial judge absent an error of law, Rule 59(e) permitting district courts to correct a clear error of law or to prevent manifest injustice. *Wickersham v. Ford Motor Co.*, 997 F.3d 526, 538 (4th Cir. 2021). "A motion for reconsideration is a limited vehicle used 'to correct manifest errors of law or fact or to present newly discovered evidence." *Davis v. Complete Auto Recovery Servs., Inc*, 2022 U.S. App. LEXIS 31781, at *3-4 (4th Cir. Nov. 17, 2022) (denying the plaintiff's motion to alter or amend, and finding that the plaintiff stated a breach of the peace claim showing the defendant was "not authorized to repossess" [the] collateral"); *Hyman v. Devlin*, 2019 U.S. Dist. LEXIS 97008, 2019 WL 2422798 (WD Pa. 2019), denying Plaintiff's Motion for Reconsideration of Order Reducing Punitive Damages Award from $500,000 to $30,000 in a case that "arose from a Pennsylvania State Police Trooper's intervention in the civil repossession of an automobile" in which the court granted the defendant's post-trial motion and reduced the jury's $500,000 punitive damages award to $30,000.

Under Rule 60, a court may correct of alter a mistake or oversight that should be corrected in the interests of justice.

---

applied in "extraordinary circumstances," *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988). *Cf. Justus v. Clarke*, 78 F.4th 97, 106 (4th Cir. 2023), cert. denied sub nom. *Dotson v. Justus*, 144 S. Ct. 1096, 218 L. Ed. 2d 340 (2024)(recognizing "Rule 60(b)(6) 'gives a court authority to relieve a party from a judgment for any other reason not articulated in sections (1) through (5), but only when the movant demonstrates extraordinary circumstances'").

The Fourth Circuit has approved an amendment of a pleading in circumstances like those in this action. *See Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006). In *Laber*, the court summarized the relief sought in this request as follows:

> [A] district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Rule 59(e) or Fed.R.Civ.P. 60(b). *See Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985) ("[O]nce judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed.R.Civ.P. 59(e) or 60(b)."); *Scott v. Schmidt,* 773 F.2d 160, 163 (7th Cir.1985) (holding same); 6 Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1489; *see also Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indust., Inc.,* 889 F.2d 524, 526 n. 3 (4th Cir.1989) ("The Court denied their [Rule] 59(e) motion, thereby effectively denying their [Rule 15(a) ] motion as well."); *DuBuit v. Harwell Enters., Inc.,* 540 F.2d 690, 692 (4th Cir.1976) ("[T]he final order of the court disposed of all of the issues between these two plaintiffs and the defendants, and since no appeals were taken the judgment became a finality and terminated the case as to them. Under these circumstances, the case could only be reopened or the order revised under the provisions of Rule 59 or 60...."). A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227 (reversing denial of motion for reconsideration of judgment of dismissal where district court abused its discretion in denying motion to amend); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 n. 1 (5th Cir.1981) ("Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that [the] judgment ... was inappropriate and that therefore the motion to vacate should have been granted.")…

*Id.* at 427–28.  *Cf. Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 196 (4th Cir. 2009)("We nevertheless reverse the district court's November 19, 2007, order denying plaintiffs' Rule 59(e) motion to alter or amend the judgment for the purpose of allowing plaintiffs leave to file an amended complaint. The judgment is vacated, and the case is remanded").

Thereafter the Fourth Circuit concluded in *Laber*, as should be the case under this record, there is no basis to conclude Brown's theory, based on his written contract and Virginia law (or even the prior theory dismissed by the Court under the SCRA) was put forth in bad faith. *Laber*, 438 F.3d at 428. Rather, as supported herein, Brown has based his claims based on long-standing

Page 7

Virginia common and statutory law as well as his contractual agreement with the Auto Defendants. Second, like in Laber, the Defendants have performed no significant discovery, and whatever discovery that has occurred would not be duplicated because Brown simply moves to remove claims and allegations no longer before the Court (according to Dkt. 33 and 42) and to add two additional facts which were obtained and disclosed in discovery but were not part of Brown's Amended Complaint. *Laber*, 438 F.3d at 428 ("Any discovery it did conduct need not be duplicated because Laber's proposed complaint does not put any new facts at issue but merely states an "alternative theory" for recovery. *Foman,* 371 U.S. at 182, 83 S.Ct. 227 (reversing district court's entry of judgment of dismissal and denial of plaintiff's motion to amend where 'the amendment would have done no more than state an alternative theory for recovery'")). Third, based upon the caselaw and authorities in Brown's prior opposition (Dkt. 57) and set forth herein, it cannot be said that Brown's amendment would be futile against Torres to permit his FDCPA claim to proceed along with his supplemental state law claims against the other Defendants which concerning the same nucleus of facts.    *Laber*, 438 F.3d at 429.

"Because [Brown] did not act in bad faith, his proposed amendment would not prejudice [Torres and other Auto Defendants], and the amendment is not futile [and it would be an]…abuse" of discretion to deny this "motion for reconsideration and to amend." *Id.*

Further, it should be noted that Torres sought to have FDCPA claims dismissed against it in another case in this Court, currently pending before Judge Walker, who denied Torres' arguments "in its entirety" last week. Exhibit C, *Thames v. Exeter Finances LLC* (Case 2:25-cv-00159-JKW-DEM). Judge Walker did "[p]ursuant to Fed. R. Civ. P. 15…[and] *sua sponte*, give[] the plaintiff leave to amend the Amended Complaint" to sure certain limited definitions. *Id.*

In the interests of justice, Mr. Brown requests the Court to reconsider its prior judgments on Plaintiff's FDCPA claims and dismissal of the supplemental state law claims (Dkt. 65=66) to permit this action to proceed. "Everyone agrees that the term (debt collector) [to which the FDCPA applies] embraces the repo man—someone hired by a creditor to collect an outstanding debt." *Henson v. Santander*, 582 U.S. 79, 81 (2017). And notwithstanding the Court's holding (discussed elsewhere in this brief), Virginia law (i.e. common law and statutory) that no tow of Brown's vehicle was permitted absent a court order while he was inside the vehicle and objecting which was and remains his legal right. The Court's prior judgments (Dkt. 65-66) should be vacated and leave should be granted under the circumstances presented for Brown to amend his pleading for the first time against Torres as proposed herein, to permit this action to proceed.

## 2. Plaintiff has properly asserted a claim against Torres Towing under the FDCPA

As the Fourth Circuit has stated, § 1692f(6) is an inclusion to the term debt collector that serves to include as debt collectors for the purposes of § 1692f(6) those who enforce security interests. In *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F 3d 373, 378 (4th Cir. 2006), the Fourth Circuit said:

> This provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest. *See* Jordan v. Kent Recovery Servs., Inc., 731 F. Supp. 652, 657 (D. Del. 1990)*)* ("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6)."). In other words, this provision is not an exception to the definition of debt collector, it is an inclusion to the term debt collector. It serves to include as debt collectors, for the purposes of § 1692f(6), those who only enforce security interests. It does not exclude those who enforce security interests but who also fall under the general definition of "debt collector." *See* Piper, 396 F.3d at 236 ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts.").

*Id.* (emphasis added).

A repossessor who takes non-judicial action to carry out the repossession of a consumer's property while there is no present right to do so commits an unfair and unconscionable practice under the FDCPA. *See* 15 U.S.C. § 1692f(6)(A).  Torres Towing, whose business is repossession, which includes the enforcement of security interests, must comply with the provisions of the FDCPA dealing with non-judicial repossession, as was stated by the Supreme Court thirteen years after the Fourth Circuit's *Wilson* opinion, in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019) (explaining that the language of § 1692a(6) is broad enough to include repo men as well as nonjudicial mortgage foreclosures, stating: "if Congress meant to cover *only the repo man*, it could have said so" (emphasis added)). As Torres Towing is in the business of repossessions, there is no dispute that it is subject to these requirements of the FDCPA.

At issue is whether Torres Towing breached the peace when it seized Plaintiff's vehicle as it had been contracted to do on behalf of the secured party, who in this case has been collectively referred to as "the Auto Defendants" Southern Auto Finance Company, LLC, d/b/a SAFCO, and SAFCO Warehouse SPV 1, LLC, as secured parties under the vehicle purchase loan agreement, and which it was entitled to do within the constraints of the Uniform Commercial Code's provisions governing the rights of a secured party to take possession of its collateral after default, as provided in Va. Code § 8.9A-609  as follows:

**Secured party's right to take possession after default.**

(a) Possession; rendering equipment unusable; disposition on debtor's premises. After default, a secured party:
(1) may take possession of the collateral; and
(2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under § 8.9A-610.
(b) Judicial and nonjudicial process. A secured party may proceed under subsection (a):
(1) pursuant to judicial process; or
(2) without judicial process, <u>if it proceeds without breach of the peace</u>.

*Id.* (emphasis added)

The repossession of Plaintiff's vehicle was also covered by the Title 9A of the UCC, which applies to any transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract. Va. Code § 8.9A-109(a)(1). *Cappo Management V, Inc., t/a Victory Nissan of Chesapeake v. Britt*, 282 Va. 33, 38, 711 S.E.2d 209, 211, 2011 WL 2277386, *3, 2011 Va. Lexis 124, *6 (Va. 2011); *Barnette v. Brook Road, Inc.* 457 F. Supp. 2d 647, 658 (E.D. Va. 2006).

If a breach of the peace occurs during the repossession, the repo process must stop, and the secured party (and its agents like Torres acting on its behalf) must, pursuant to judicial process, obtain a court order before it can seize the collateral. Under FDCPA parlance, the repo man, in this case Torres Towing, has <u>taken nonjudicial action to effect disposition of property claimed as collateral through an enforceable security interest</u>, that is, Plaintiff's vehicle, when it towed his car when it had <u>no present right to possession of the property</u> after having breached the peace during the repossession process, and thereby lost the right to complete the repossession. (There was no court order allowing the seizure of Mr. Brown's vehicle. It was thus a "self-help repossession".)

As Judge Young recently explained in *Mitchel v. Stellantis Financial Services, Inc.*, 2025 U.S. Dist. LEXIS 183993, 2025 WL 477399 (ED Va.) September 18, 2025, under the unfairness prohibition contained in 15 USC§ 1692f(6):

> The FDCPA provides a non-exhaustive list of acts that violate the statute. … (In particular, a debt collector may not "[t]ak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest." *Id.* § 1692f(6)(A). Put differently, "a repossession without judicial process violates § 1692f(6)(A) *unless* the property is collateral under an enforceable security interest *and* the repossessor has a 'present right to possession' of the property." Richards v. PAR, Inc., 954 F.3d 965, 968 (7th Cir. 2020). Whether a debt collector has a "present right to possession" is a matter of state law. Id. at 966; *see also* Shue v. JMAC Distrib., LLC, 745 F. Supp. 3d 3, 6 (D. Mass. 2024) (noting that "[r]epossession rights are governed by the relevant state's property and contract law" because the FDCPA does not define what it

Page 11

means to have a "present right to possession")[3]

This Court, after the ruling that is the subject of this Motion, entered an October 17, 2025 Memorandum Order in *Thames v. Exeter Finances LLC*, et al, Case 2:25-cv-00159, Dkt. 51, denying in its entirety Torres Towing, LLC's Motion to Dismiss, and granting the plaintiff leave to amend, in a case where, among other things, Torres Towing attempted repossession twice in the same day, each time over the plaintiff's protests, causing damage to the plaintiff's vehicle during the process, and with the local police on each repo attempt (in the first such attempt the police forced Torres to stop their repo attempt because the tow driver had a suspended driver's license) called to the scene during each repossession attempt.

Under Virginia law (and the laws of all the other jurisdictions cited above, and also the contract governing the purchase of Brown's vehicle, to which this Court must look to determine whether or not the repo company had the right to repossess, without a court order no breach of the peace tow may occur. In other words, in light most favorable to Brown at the motion to dismiss stage (which is not disputed),  a debt collector for purposes of the FDCPA in the context at issue here, has no present right at the time of the tow, to possession of the property during a breach of the peace occurs—i.e. if the debtor is present and objecting to the non-judicial taking

---

[3]     In both the 7th Circuit *Richards* case and the *Shue* Massachusetts district court case, violations of § 1692f(6) were found to have been committed by the defendant repossession companies. In *Shue*, the Court found itself satisfied that hooking the BMW to the tow truck and proceeding to lift it up, with Shue in the car, more than adequately denoted a breach of the peace. In *Richards*, the Seventh Circuit, in an appeal following an unsuccessful motion for reconsideration of the district' court's entry of final judgment for the defendants - PAR, the forwarder who the lender hired to repossess the subject vehicle, and Lawrence Towing - who PAR subcontracted with to carry out the repossession, reversed and remanded, ruling that a reasonable jury could find that the towing company employees did not have a present right under Indiana UCC law to repossess Richards's vehicle when, over the consumer's objections, the repo man called the police, who went out, handcuffed the consumer, threatened her with arrest, and then removed the handfuffs after the car was towed away, thereby finding that the consumer had a viable FDCPA claim.

of his property without a court order.

In *Byrd v. Commonwealth,* 158 Va. 897, 902-03 (1932), the Virginia Supreme Court described the general parameters of acts constituting a breach of the peace at common law and as recognized in Virginia common law:

> By 'peace' as used in the law in this connection, is meant the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is 'a breach of the peace.' It is the offense of disturbing the public peace, or a violation of public order or public decorum. *Actual personal violence is not an essential element in the offense.* (quoting Davis v. Burgess, 54 Mich. 514, 20 N.W. 540, 542 (Mich. 1884)(emphasis added).

*Id.*

Over seventy years ago, the Virginia Supreme Court also announced that when a debtor resists a repossession, the other party must use the civil justice system to enforce its rights. *Universal Credit Company v. Dalton Taylor and J. H. Olcott*, 164 Va. 624; 180 S.E. 277 (1935). ("Under the terms of the conditional sales contract, after the buyer had made default, the seller was entitled to reclaim the truck; if possession had been denied it, plaintiff might have had recourse to the provisions of this statute. The right to possession of chattels may be exercised without recourse to the courts, provided this can be done peaceably.  It is only *when a right of one is denied or resisted by another, that such party must resort to appropriate legal proceedings to enforce that right.* See 55 C.J. 1287, and cases cited in notes 73-79.").  *Id.* at 164 Va. 630-31, 180 S.E. 280 (emphasis added).

Consequently, under Virginia law any debtor has the "privilege to retain possession of his car and force the defendant to use judicial methods of repossession." *Greene v. First National Exchange Bank*, 348 F. Supp. 672, 675 (W.D. Va. 1972) (stating that this privilege keeps the self-help statute constitutionally sound).

Here, Torres Towing lost the right to continue with a non-judicial seizure on behalf of the secured parties when Plaintiff repeatedly objected to the repossession from inside his vehicle, when the repo man lifted his car off the ground with Mr. Brown in it, and when it called the police, who came out to the scene and forcibly removed Mr. Brown from his vehicle, and arrested him for Obstruction of Justice. In so doing, Torres Towing violated the UCC by repossessing Plaintiff's car through a breach of the peace, thus losing the present right to effect the dispossession of Mr. Brown's vehicle. Granting Plaintiff's Motion to Alter or Amend provides the Court with the opportunity to cure clear errors of law and avoid the manifest injustice resulting from the judgment that has been entered under these facts when viewed in a light most favorable to Brown.

Despite acknowledging that Brown's contention that the multiple breaches of peace under the Virgina Uniform Commercial Code ("UCC") terminated any present right to possession of the vehicle at the time of the breach, the Court ignored the binding precedent from the Virginia Supreme Court and erroneously concluded that a breach of peace does not terminate any then-present right to possession under the UCC.

Courts in Viginia and around the country have held contrary and specifically that a repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. at 1232 ("If, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist."); *Shelton v. Marshall*, 724 F. Supp. 3d 532, 548 (W.D. Va. 2024) ("[A] creditor breaches the peace when it persists with a repossession over the debtor's objections."); *see also Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that

Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer confronted repossession agent, secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections."). This approach has deep roots in Virginia. *See Universal Credit Co. v. Taylor*, 180 S.E. 277, 280 (Va. 1935) ("when a right of one is denied or resisted by another," the repossessor "must resort to appropriate legal proceedings to enforce that right.").

Additionally, courts routinely find that a repossession agent breaches the peace when connects and raises a vehicle that is occupied. *See Hansen v. Santander Bank, N.A.*, 2023 U.S. Dist. LEXIS 150926, at *15 (D. Minn. Aug. 28, 2023) (collecting cases); *Nieves v. Able Auto Adjusters*, 2019 U.S. Dist. LEXIS 239628, 2019 WL 13043035, at *1 (C.D. Cal. Mar. 12, 2019)

(attempting to repossess a car while an occupant is known to be in it a breach of the peace); *Sinegal v. Big Horn Auto Sales, Inc.*, 2022 U.S. Dist. LEXIS 46409, 2022 WL 799908, at *3 (S.D. Tex. Mar. 16, 2022) (breach of peace where the tow truck crashed into the plaintiff's vehicle and then lifted it while it was occupied by two people) *Thomas v. GM Fin. Co.*, 2020 U.S. Dist. LEXIS 251551, at *12 (W.D. Tex. Mar. 18, 2020) (noting that moving a vehicle while it is occupied sufficiently pleads breach of the peace); *Smith v. AFS Acceptance, LLC*, 2012 U.S. Dist. LEXIS 75976, at *9 (N.D. Ill. June 1, 2012) (pleading that repossession agent lifted and moved occupied vehicle stated claim for breach of the peace). It also constitutes a battery under common law. *See City of Fort Worth v. Deal*, 552 S.W.3d 366, 372 (Tex. App. 2018), *reh'g denied* (July 12, 2018), *review denied* (Oct. 26, 2018) (because people have such a close connection with their vehicles indirect, offensive contact with an occupied vehicle is sufficient to constitute contact with person's body).

Finally, the UCC specifically bars repossessors from using the help of law enforcement officers in a self-help repossession. *See* Va. Code § 8.9A-609 at Official comment 3 ("This section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer. A number of cases have held that a repossessing secured party's use of a law enforcement officer without the benefit of judicial process constituted a failure to comply with former section 9-503.").[4] Additionally, because the use of officers in a repossession is a constructive use of force, courts across the Country have found the use of police officers in a repossession to be a breach of the peace. *See In re 53 Foot Trawler Pegasus*, 2008 WL 4938345, at *5 (M.D. Fla. Nov. 18, 2008) ("If the strong arm of the law is needed, then the creditor must

---

[4]    The "'Official Comments' of the Code are, of course, not binding on [this] court, . . . but they do represent powerful dicta." *Girard Trust Co. v. Strickler In re Varney Wood Prods., Inc.*, 458 F. 2d 435, 437 (4th Cir. 1972)

secure judicial intervention when a police officer is carrying out or sanctioning the repossession."); *Albertorio-Santiago v. Reliable Fin. Servs.*, 612 F. Supp. 2d 159, 170 (D.P.R. 2009) ("If law enforcement is needed, then a breach of the peace has occurred, and the creditor must secure judicial intervention to carry out the repossession."); *Waisner v. Jones*, 755 P.2d 598, 602 (N.M. 1988) ("in a self-help repossession a repossessor is not permitted to be assisted by law enforcement officials in order to prevent a breach of the peace"); *In re MacLeod*, 118 B.R. 1 (Bankr. D.N.H. 1990) (off-duty police restrained debtor from objecting; held to violate U.C.C. § 9-503); *Walker v. Walthall*, 588 P.2d 863, 866 (Ariz. Ct. App. 1978) ("the introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or non-participation in the actual events, would constitute state action, thereby invalidating a repossession without a proper notice and hearing"); *Dolphin Truck Leasing v. Gen. Motors Acceptance Corp.*, 340 So. 2d 1278 (Fla. Dist. Ct. App. 1977); *Fulton v. Anchor Sav. Bank*, 452 S.E.2d 208 (Ga. Ct. App. 1994) (police order to give up car precludes voluntary surrender); *Firebaugh v. Gunther*, 233 P. 460 (Okla. 1925); *Harris v. Cantwell*, 614 P.2d 124 (Or. Ct. App. 1980); *Stone Mach. Co. v. Kessler*, 463 P.2d 651, 655 (Wash. App. 1970).

**3. Because the peace was breached, Torres Towing did not have a then-present right to possession of Brown's vehicle.**

Virginia's UCC provides:

(a) Possession; rendering equipment unusable; disposition on debtor's premises. After default, a secured party:

> (1) may take possession of the collateral; and

> (2) without removal, may render equipment unusable and dispose of collateral on a debtor's premises under § 8.9A-610.

(b) Judicial and nonjudicial process. A secured party may proceed under subsection (a):

(1) pursuant to judicial process; or

(2) without judicial process, *if it proceeds without breach of the peace*.

Va. Code § 8.9A-609 (emphasis added).

Thus, "[a]fter default, a secured party may take possession of the collateral . . . pursuant to judicial process or without judicial process, if it proceeds without breach of the peace." *Id.* Put another way, a secured party *may not proceed without judicial process if there is a breach of peace*. This means that *any* breach of peace during a nonjudicial repossession terminates the then-present right to possession of the collateral. This was confirmed by the Virginia Supreme Court almost a decade ago:

> The right to possession of chattels may be exercised without recourse to the courts, provided this can be done peaceably. It is only *when a right of one is denied or resisted by another, that such party must resort to appropriate legal proceedings to enforce that right*.

*Universal Credit Co.*, 180 S.E. at 280 (emphasis added). Thus, the Virgina Supreme Court has concluded that a secured party *may not take possession of a vehicle without a court order if self-help is denied or resisted*. *Id.*; *see also Goard v. Crown Auto, Inc.*, 170 F. Supp. 3d 915, 920 (W.D. Va. 2016) ("[T]he Virginia Code . . . clearly states that self-help repossession can only proceed 'without judicial process, if it proceeds without breach of the peace.'" (citing Va. Code Ann. § 8.9A-609; *Universal Credit Co*); *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1231 (W.D. Va. 1990) ("If, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist."). Thus, in Virginia, a breach of peace terminates any then-present right to possession.

Unsurprisingly, courts across the country have repeatedly found that a breach of the peace negates a right to possession via self-help repossession when interpreting identical and similar versions of the UCC. *See, e.g., Richards v. PAR, Inc.*, 954 F.3d 965, 970 (7th Cir. 2020)

(Indiana UCC only allows a present right to possession through repossession if there is no breach of the peace thus breach of the peace leads to FDCPA claim); *Shue v. Jmac Distribution, LLC*, 745 F. Supp. 3d 3, 8 (D. Mass. 2024) (denying motion to dismiss because hooking up vehicle and lifting it while it is occupied is a breach of peace terminating present right to possession); *Hansen v. Santander Bank, N.A.*, 689 F. Supp. 3d 679, 688 (D. Minn. 2023) ("a breach of the peace does suspend a repossession company's present right to possession") (citing *Clarin v. Minnesota Repossessors, Inc.*, 198 F.3d 661, 665 (8th Cir. 1999)); *Thomas v. GM Fin. Co.*, 2020 U.S. Dist. LEXIS 251551, at *12 (W.D. Tex. Mar. 18, 2020) (denying motion to dismiss where the plaintiff alleged that the defendant "did not have a 'present right' to possession" when it towed her vehicle while she was inside of it, thereby committing a breach of the peace); *Gerbasi v. NU Era Towing & Serv.*, 443 F. Supp. 3d 411, 413-14 (W.D.N.Y. 2020) (holding that the plaintiff adequately alleged a violation of the FDCPA when she alleged that the defendant towing company violated state law by committing a breach of the peace when it repossessed her vehicle); *Oliver v. ARS Ohio LLC*, 2019 WL 343249, at *4 n. 5 (N.D. Ohio Jan. 28, 2019) ( "a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace"); *Wright v. Santander Consumer USA, Inc.*, 2018 WL 2095171, at *4 (M.D. Fla. May 1, 2018) ("If a repossession agency breaches the peace during a self-help repossession, then it loses its right to present possession of the collateral."); *Vantu v. Echo Recovery, L.L.C.*, 85 F. Supp. 3d 939, 943 (N.D. Ohio 2015) ("In general, a security-interest enforcer loses its right to present possession of the collateral if it breaches the peace."); *Clark v. PAR, Inc.*, 2015 WL 13781846, at *5 (C.D. Cal. July 22, 2015) (holding that the defendant was liable under the FDCPA because it did not have the present right to the collateral where it breached the peace during the attempted repossession) (collecting cases); *Mkhitaryan v. U.S. Bancorp*, 2012 U.S. Dist. LEXIS 176724, at *10 (D. Nev. Dec. 12, 2012)

(finding "the court must determine if defendants breached the peace when repossessing the BMW from plaintiffs" to resolve § 1692f(6) claim); *Yeldell v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 171059, at *49 (N.D. Ala. Mar. 2, 2011) ("a question of fact remains as to whether a breach of the peace occurred that deprived Wells Fargo of its right to repossess the car without judicial process"); *Alexander v. Blackhawk Recovery & Investigation, L.L.C.*, 731 F. Supp. 2d 674, 680 (E.D. Mich. 2010) ("a question of fact remains as to whether Blackhawk breached the peace, and thereby lost its right to possession of the vehicle"); *Fleming-Dudley v. Legal Investigations, Inc.*, 2007 WL 952026, at *5 (N.D. Ill. Mar. 22, 2007) (finding the plaintiffs stated a claim for breach of the peace and therefore the defendant did not have a present right of possession); *Purkett v. Key Bank USA, Inc.*, 2001 WL 503050, at *2 (N.D. Ill. May 10, 2001) (finding the plaintiff sufficiently alleged a breach of the peace occurred when the defendant broke into the garage, thus, obviating defendant's right to take possession).

### 4. A repossession agent breaches the peace if he continues with a repossession over a consumer's protest

The UCC does not define a breach of the peace, it leaves that to the Courts to develop. *See* Va. Code § 8.9A-609 at Official Comment 3 ("[T]his section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts."). Generally speaking, under the UCC, any act likely to result in an immediate loss of public order is typically understood to be a breach of the peace. *See, e.g., Chapa v. Traciers & Associates*, 267 S.W.3d 386, 395 (Tex. App. 2008) ("conduct that incites or is likely to incite immediate public turbulence, or that leads to or is like to lead to an immediate loss of public order and tranquility").

For the purposes of the UCC, it does not matter who breaches the peace. The plain language of the statute states that a self-help repossession can only proceed "without breach of the peace."

Va. Code § 8.9A-609. Liability does not turn on who breaches the peace, if any breach occurs—be it by the repossessor, the debtor, or third party—the statute is violated. *See Hensley*, 693 F.3d at 689-90 (debtor's objection constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess); *Duke v. Garcia*, 2014 U.S. Dist. LEXIS 48062, at *11-12 (D.N.M. Feb. 28, 2014) ("actual violence means a breach of the peace has occurred, regardless of who initiated it."); *Yeldell v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 171059, at *24 (N.D. Ala. Mar. 2, 2011) (UCC violated even if the consumer breached the peace). Thus, even if a consumer's actions cause a breach of peace, the repossessor is liable where he nevertheless continues the repossession. While the UCC does not define breach of the peace, since the UCC was enacted, courts around the country have ruled certain conduct plainly constitutes a breach of the peace.

The UCC gives consumers an absolute right to object to a self-help repossession. "As numerous state court cases and secondary authorities have recognized, an objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess." *Hensley v. Gassman*, 693 F.3d 681, 689-90 (6th Cir. 2012).

Courts in Viginia and around the country have held that a repossession agent breaches the peace if he continues with a repossession over a consumer's protest. *Wallace*, 743 F. Supp. at 1232 ("If, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist."); *Shelton v. Marshall*, 724 F. Supp. 3d 532, 548 (W.D. Va. 2024) ("[A] creditor breaches the peace when it persists with a repossession over the debtor's objections."); *see also Marcus v. McCollum,* 394 F.3d 813, 820 (10th Cir. 2004); *Dixon v. Ford Motor Credit Co.*, 72 Ill. App. 3d 983, 988, 391 N.E.2d 493, 497 (1979); *Hollibush v. Ford*

*Motor Credit Co.*, 179 Wis. 2d 799, 812, 508 N.W.2d 449, 455 (Ct. App. 1993) ("We conclude that the undisputed fact is that Hollibush or her fiancé told FMCC's agent that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."); *Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex. Civ. App. 1973), *dismissed* (Apr. 3, 1974) (because consumer confronted repossession agent, secured party was forced to either go to court or repossess vehicle at time when the consumer would not notice and protest); *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348, 352 (Ind. Ct. App. 1980) ("[I]f [a] repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *First & Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988) ("[I]t is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."); *Morris v. First Nat. Bank & Tr. Co. of Ravenna*, 21 Ohio St. 2d 25, 30, 254 N.E.2d 683, 686 (1970); *Hopkins v. First Union Bank of Savannah*, 193 Ga. App. 109, 110, 387 S.E.2d 144, 146 (1989) (agreeing with most courts that repossession in the face of a debtor's oral protest constitutes a breach of the peace); *Martin v. Dorn Equip. Co.*, 250 Mont. 422, 427, 821 P.2d 1025, 1028 (1991) (quoting J. Sheldon & R. Sable, *Repossessions,* § 6.3 (1988)) ("[T]he general rule is that the creditor cannot . . . seize any property over the debtor's objections."). This approach has deep roots in Virginia. *See Universal Credit Co. v. Taylor*, 180 S.E. 277, 280 (Va, 1935) ("when a right of one is denied or resisted by another," the repossessor "must resort to appropriate legal proceedings to enforce that right.").

    In a case involving remarkably similar circumstances, the Court in *Roberts v. Image Recovery Service, Inc. and Bridgecrest  Acceptance Corporation*, 2025 U.S. Dist. LEXIS 201554; 2025 LX 415142; 2025 WL 2896460 (S.D. Ill., October 10, 2025), considered the Illinois UCC

provision on the rights of a secured party after default, similar to Va. Code § 8.9A-209 and concluded:

> "that Defendant repossessed Plaintiff's vehicle despite a breach of the peace. It finds there was a breach of the peace for two reasons. First, Mr. Suda started the repossession when he knew Plaintiff was sitting inside of the vehicle. The Court has not found an Illinois case that addresses whether repossession of an occupied vehicle is a breach of the peace, so it will look to decisions from other jurisdictions. *See Whitaker v. Wedbush Secs., Inc., 2020 IL 124792, 443 Ill. Dec. 635, 162 N.E.3d 269, 273 (Ill. 2020)* ("[T]he Illinois UCC is based on the Uniform Commercial Code enacted by all 50 states, and therefore, decisions from other states and federal case law may be helpful in this analysis. In the absence of Illinois cases on the subject, Illinois courts have looked to UCC decisions from other jurisdictions."). There are many courts, including one within this Circuit, that have found it is a breach of the peace to repossess an occupied vehicle. *See e.g.*, *Shue v. JMAC Distribution, LLC., 745 F. Supp. 3d 3, 7-8 (D. Mass. 2024)* (hooking vehicle to tow truck and proceeding to lift it up, with plaintiff in **[*6]** the vehicle, adequately denotes breach of the peace), *Hansen v. Santander Bank, N.A., 689 F. Supp. 3d 679, 691 (D. Minn. 2023)* (debtor adequately alleged breach of the peace when she claimed repossession agent lifted up her car with her in it), *Nieves v. Able Auto Adjusters, No. CV-18-8262, 2019 U.S. Dist. LEXIS 239628, 2019 WL 13043035, at *1 (C.D. Cal. Mar. 12, 2019)* (repossession agent's attempt to repossess a car while occupant is known to be in it could be breach of the peace), *Smith v. AFS Acceptance, LLC, No 11 C 5340, 2012 U.S. Dist. LEXIS 75976, 2012 WL 1969415, at *4 (N.D. Ill. June 1, 2012)* (breach of the peace was sufficiently pled where plaintiffs jumped into vehicle while it was being towed and repossession agent continued to tow vehicle), *Sinegal v. Big Horn Auto Sales, Inc., No. H-21-3102, 2022 U.S. Dist. LEXIS 46409, 2022 WL 799908, at *3 (S.D. Tex. Mar. 16, 2022)* (breach of the peace was sufficiently alleged where tow truck crashed into debtor's vehicle and then lifted it onto the tow truck with two occupants inside), *Thomas v. Gen. Motors Fin. Co. Inc., No. 5:19-CV-1418-DAE, 2020 U.S. Dist. LEXIS 251551, 2020 WL 8771387, at *4 (W.D. Tex. Mar. 18, 2020)* (defendant did not have present right to possession when it committed a breach of the peace by towing plaintiff's vehicle with her was inside of it). Beginning to repossess Plaintiff's vehicle while it was occupied "plainly constitute[s] the kind of hazard resulting from confrontation during self-help repossession that the UCC seeks to avoid." *Shue, 745 F. Supp. 3d at 8*. It creates a high risk of injury and increases the probability for violence. Thus, the Court finds that Mr. Suda starting to repossess Plaintiff's vehicle while it was occupied is a breach of the peace as defined by *Section 9-609*.

Second, two police officers from **[*7]** the Shiloh PD assisted Mr. Suda in the repossession of Plaintiff's vehicle. Illinois courts have not addressed whether police

involvement in a self-help repossession is a breach of the peace. However, the Court is satisfied that an Illinois court would hold that it is. Comment 3 to *§ 9-609 of the Uniform Commercial Code* states that it "does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer." Many jurisdictions have held that the assistance of law enforcement officers in a self-help repossession constitutes a breach of the peace. *See e.g.*, *In re MacLeod, 118 B.R. 1, 3 (Bankr. D.N.H. 1990)* (repossession accomplished with the assistance of a uniformed, off-duty police officer was not lawful "self-help repossession"), *Waisner v. Jones, 1988- NMSC 049, 107 N.M. 260, 755 P.2d 598, 603 (N.M. 1988)* (presence of military security police during repossessor's attempted self-help repossession of collateral on military base was not permissible), *Walker v. Walthall, 121 Ariz. 121, 588 P.2d 863, 866 (Ariz. Ct. App. 1978)* (the introduction of law enforcement officers into a self-help repossession, regardless of their degree of participation in the events, invalidates the repossession), *First and Farmers Bank of Somerset, Inc. v. Henderson, 763 S.W.2d 137, 140 (Ky. Ct. App. 1988)* (presence of a deputy sheriff necessary to prevent violence demonstrated that self-help repossession was a breach of the peace), *Stone Mach. Co. v. Kessler, 1 Wn. App. 750, 463 P.2d 651, 655 (Wash. Ct. App. 1970)* (sheriff's aid in repossession of tractor **[*8]** amounted to constructive force, intimidation and oppression constituting breach of the peace).

These courts reason that, the presence of a police officer, by itself, "is sufficient to chill the legitimate exercise of the defaulting party's rights." *Waisner, 755 P.2d at 602*; *see also MacLeod, 118 B.R. at 3* (reasoning that "if a creditor can argue that they have avoided a breach of the peace by use of law enforcement personnel, and then contend they are in a position for self-help repossession, they effectively circumvent the intent of the statute which is to give the debtor a right to object without the presence of state action"), *Stone Mach. Co., 463 P.2d at 655* (noting that the effect of sheriff's involvement in repossession was to prevent defendant "from exercising his right to resist by all lawful and reasonable means a nonjudicial take-over" and "[t]o put a stamp of approval upon this method of repossession would be to completely circumvent the purpose and intent of the statute").

The Court finds that an Illinois court would agree with this reasoning. In *Murray v. Poani*, the plaintiffs brought suit under *42 U.S.C. § 1983* against a police officer for his involvement in a vehicle repossession that they alleged violated their constitutional rights. *2012 IL App (4th) 120059, 980 N.E.2d 1275, 1277, 366 Ill. Dec. 916 (Ill. App. Ct. 2012)*. In the case, the police **[*9]** officer threatened to arrest one of the plaintiffs if she continued to interfere with the repossession and ordered her to turn over the vehicle's keys. *Id. at 1278*. The crucial question was whether the officer's involvement in the repossession constituted state action. *Id. at 1279*. Although the courts focus was on whether there was state action, it made statements in the decision that indicate an Illinois court would hold that the assistance of law

Page 24

enforcement in a self-help repossession constitutes a breach of the peace. Specifically, the court stated that:

> a debtor's 'objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess. A police officer's arrival and close association with the creditor during the repossession may signal to the debtor that the weight of the state is behind the repossession and that the debtor should not interfere by objecting.'

*Id. at 1279-80*. It also noted that "a police officer must not act as a 'curbside courtroom' in resolving a dispute between a repossessor and debtor as this is not the proper **[\*10]** function of the police" and "such a dispute should be resolved by the courts, not a police officer." *Id. at 1283*. These arguments are very similar to those employed by courts to determine that the assistance of a police officer in a self-help repossession is a breach of the peace. Therefore, the Court concludes that the assistance of Shiloh PD officers in the repossession of Plaintiff's vehicle is a breach of the peace under *Section 9-609*. Since the Court finds that there was a breach of the peace, Defendant was not entitled to engage in self-help repossession of Plaintiff's vehicle. As such, Plaintiff is entitled to summary judgment as to liability on her Illinois UCC claim

*Id.*

5. **Alternatively, if the Court believes that the Older Virginia Common Law and Statutory Prohibitions Discussed Above Are Not Binding or Persuasive, Plaintiff Requests the Court to Certify Questions of law to the Supreme Court of Virginia**

In dismissing Torres from the action (Dkt. 65), the Court concluded there were "no authorities in the United States Court of Appeals for the Fourth Circuit…[which are] precedential nor persuasive" to bar the "right to take possession of collateral upon default [during the occurrence of a]…breach the peace." Dkt. 65 at 6. Further, the Court dismissed the Auto Defendants, declining to exercise supplemental jurisdiction after dismissing the FDCPA claim against Torres based upon this legal conclusion. Dkt. 66.

Respectfully, as argued herein, Plaintiff believes the Court's legal conclusion was in error and also disregards the contractual promises owed to Brown that no tow would ever

occur during a breach of the peace.  Dkt.. 54 at page 2 (the purchase contract stipulates that the secured party may engage in a self-help repossession but "in doing so [the secured party and its agents] may not breach the peace").  In addition, Virginia statutory law and Virginia common law have also long barred a tow in breach of the peace without a valid court order (which never occurred in this case).  While the Court concluded in its opinion dismissing Torres that no "precedential nor persuasive" authorities exist to support this view, Plaintiff in his opposition and again here, cites numerous cases and authorities consistent with Plaintiff's arguments that Virginia law does not permit a tow in breach of the peace without a court order authorizing it—especially when viewing the facts in a light most favorable to him at this stage of the proceedings.  These authorities include the precedents of the Virginia Supreme Court and numerous other district court decisions and state circuit court decisions to Virginia law.

The Fourth Circuit has explained:

It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications. A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion. Only when this inquiry proves unenlightening, as we find it does in this case, should a federal court seek guidance from an intermediate state court.

When seeking such guidance we defer to a decision of the state's intermediate appellate court to a lesser degree than we do to a decision of the state's highest court. Nevertheless, we do defer. Indeed, the Supreme Court has specifically directed:

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for as certaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. A T & T,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); *accord, Hicks v. Feiock,* 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99 L.Ed.2d

Page 26

721 (1988); *see also Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284 (1940) ("[F]ederal courts, under the doctrine of *Erie* ... must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently.").

*Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).

Since the Court did not explain in dismissing Torres from this action (and the related supplemental claims) why the state court decisions cited to it by the Plaintiff or the other Federal district court decisions from Virginia (applying Virginia law) or the even the Virginia circuit court decisions, are no longer persuasive or precedential, notwithstanding the law as stated in *Assicurazioni Generali,* Plaintiff assumes the Court believes those authorities no longer stand for good law.  Respectfully, Plaintiff can find no caselaw or legislative action reversing those authorities and believes his position remains good law and controls the issue decided by the Court in his favor.  However, based upon the Court's apparent concern, Plaintiff requests that the Court certify the legal question of Virginia Law to the Supreme Court of Virginia.

When faced with a "purely legal question[] for which there is no controlling precedent of the Supreme Court of Virginia or the Virginia Courts of Appeals…it is appropriate to certify the questions to the Supreme Court of Virginia." *A&n Elec. Coop. v. Dietzel Enters., Inc.*, No. 24-1742, 2025 WL 2860308, at *3 (4th Cir. Oct. 9, 2025).

To prevent a manifest error of law and preserve the status quo, should the Court not reconsider its dismissal of Torres and the supplemental state law claims against the Auto Defendants, Brown requests the Court, pursuant to Va. Sup. Ct. R. 5:40 to certify the following questions of law to the Supreme Court of Virginia:

1. May a secured party or its agents, on its behalf, tow a vehicle in breach of the peace while the owner is inside and objecting to the tow conducted without a court order?

2. Does the involvement of the police by the secured party and its agents to remove the owner of car objecting to the tow conducted without a court order constitute a breach of the peace?

The answers to these questions will inform the Court's application of the FDCPA claim asserted by Brown and ensure whether the Court's conclusion that the older common law (as well as the governing contractual agreement) relied upon by the Plaintiff as well as statutory law cited by the Plaintiff does not stand for the proposition that a breach of the peace tow, without a court order, is barred by Virginia law. *A&n Elec. Coop. v. Dietzel Enters., Inc.*, 2025 WL 2860308, at *3.

## <u>CONCLUSION</u>

A towing company who takes non-judicial action to carry out the repossession of a consumer's property while there is no present right to do so commits an unfair and unconscionable practice under the FDCPA. A business like Torres Towing, whose principal business is repossession (i.e., the enforcement of security interests) must comply with the provisions of the FDCPA dealing with non-judicial repossession. 15 U.S.C. § 1692a(6); *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019). Section 1692f(6) is an inclusion to the term debt collector that serves to include as debt collectors for the purposes of § 1692f(6) those who, like Torres Towing, enforce security interests. *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F 3d 373, 378 (4th Cir. 2006).

For the reasons set forth herein and based upon the authorities cited, Plaintiff Jordan Brown respectfully requests that the Court enter an order to alter or amend judgments (Dkt. 65 & 66) and:

A.   Specifically vacate Dkt. 65 & 66;

B.   Deny Torres' Motion to Dismiss;

C.   If necessary, grant leave for Plaintiff to file his proposed Second Amended Complaint; and/or

D.   If necessary, certify the proposed questions of law to the Supreme Court of Virginia to resolve the legal questions about whether a secured party and its agents are permitted to tow a vehicle by calling the police and without a court order when the owner of the vehicle is inside the vehicle objecting to the action.

<div style="margin-left:40%">

Respectfully submitted,
JORDAN BROWN
By Counsel

By:___/s/ Dale W. Pittman___
Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 (Fax)
Email: dale@pittmanlawoffice.com

Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Adam W. Short, VSB #98844
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: adam@clalegal.com

</div>

Phillip R. Robinson
CONSUMER LAW CENTER LLC
1220 Blair Mill Road, Suite 1105
Silver Spring, MD 20910
301-448-1304
phillip@maryland consumer.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notice to all counsel of record.

/s/  *Dale W. Pittman*
Dale W. Pittman, VSB #15673
Counsel for Plaintiff
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803-3212
Tel: (804) 861-6000
Fax: (804) 861-3368
dale@pittmanlawoffice.com